UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. CR99-0422-JCC-JPD |
| Plaintiff, ) | CR00-0392-JCC |
| ) | |
| v. ) | |
| ) | SUMMARY REPORT OF U.S. |
| JAMIE P. PITMAN, ) | MAGISTRATE JUDGE AS TO |
| ) | ALLEGED VIOLATIONS |
| Defendant. ) | OF SUPERVISED RELEASE |
| _____ ) | |

An evidentiary hearing on a petition for violation of supervised release in this case was conducted before the undersigned Magistrate Judge on May 2, 2006. The United States was represented by Assistant United States Attorney Donald Currie, and the defendant by Mr. Robert Leen. The proceedings were recorded on cassette tape.

On or about November 17, 2000, defendant was sentenced by the Honorable John C. Coughenour to fifty (50) months of imprisonment and five (5) years of supervised release on charges of Bank Fraud, in violation of 18 U.S.C. §§ 1344 and 2, and Money Laundering in violation of 18 U.S.C. §§ 1956 (a)(1)(A)(i) and (a)(1)(B)(i) and 2 in No. CR99-0422C; and for Using an Unauthorized Access Device in violation of 18 U.S.C. § 1029 (a)(2), and Bank Fraud in violation of 18 U.S.C. §§ 1344 and 2 in No. CR00-0392C.

The conditions of supervised release included the requirements that the defendant comply with all local, state, and federal laws, not illegally possess a controlled substance, notify the probation officer at least ten (10) days prior to any change in residence or employment, submit truthful and complete written reports, participate in substance-abuse treatment programs as directed, submit to mandatory periodic drug testing as required to determine if defendant has

reverted to use of drugs or alcohol, consent to search, and restitution obligations.

In a Petition for Warrant or Summons and a Violation Report and Request for Warrant, both dated April 3, 2006, U.S. Probation Officer Michael J. Larson asserted the following violations by defendant of the conditions of his supervised release:

(1) Failing to notify the probation officer ten (10) days prior to any change of employment, in violation of standard condition number six.

(2) Failing to submit a truthful and complete written report for the months of January 2004 through December 2005, in violation of standard condition number one.

(3) Failing to participate in substance-abuse treatment as instructed at Recovery Options Northwest, Seattle, Washington, by being terminated from the program, in violation of the special condition requiring that he participate as instructed in a program approved by the probation office for treatment of narcotic addition, drug dependency, or substance abuse, and which may include testing if defendant has reverted to the use of drugs or alcohol.

(4) Failing to report for drug testing on December 8, 2005, December 21, 2005, January 9, 2006, February 16, 2006, March 6, 2006, March 14, 2006, and March 31, 2006, in violation of the special condition requiring he participate as instructed in a program approved by the probation office for treatment of narcotic addition, drug dependency, or substance abuse, and which may include testing to determine if the defendant has reverted to the use of drugs or alcohol

(5) Using marijuana on or before January 30, 2006, in violation of standard condition number seven.

(6) Using nandrolone on or before March 7, 2006, in violation of standard condition number seven.

(7) Using 19-norandrosterone on or before March 7, 2006, in violation of standard condition number seven.

The defendant admitted alleged violations Nos. 1, 2, and 4. An evidentiary hearing took

01  place as to alleged violations Nos. 3, 5, 6, and 7.  Joseph H. Wolfe, CDP, the clinical director
02  of Recovery Options Northwest, U.S. Probation Officer Michael J. Larson, and the defendant
03  testified at the hearing. Exhibits 1, 8, 9, 10, 11, 12, 13, and 14 were offered by the government
04  and received into evidence. Exhibits 15 and 16 were offered by the defendant and received into
05  evidence.  The balance of this Report and Recommendation is directed to these alleged
06  violations.

07  <u>Alleged Violation No. 3</u>.  Joseph H. Wolfe, the clinical director of Recovery Options
08  Northwest, testified that he replaced Mr. Cochran as the defendant's prior treating professional.
09  The defendant missed an appointment that had been scheduled for January 17, 2006.  The
10  defendant stated that he did not receive notice of the appointment.  Nevertheless, Probation
11  Officer Larson advised the defendant of the missed appointment, and made sure that the
12  defendant was aware of an appointment scheduled for January 31, 2006. Mr. Pitman arrived and
13  met Mr. Wolfe on January 31, 2006, as scheduled.  The meeting between Mr. Pitman and Mr.
14  Wolfe lasted between 5 and 10 minutes.  Mr. Wolfe believed that Mr. Pitman was not amenable
15  to treatment, was agitated, and verbally abusive.  As a result, Mr. Pitman was terminated from
16  the program, which is the basis for alleged violation No. 3.

17  Based on the testimony offered, alleged violation No. 3 was not proved.  Further
18  treatment was terminated by Mr. Wolfe, apparently as a result of Mr. Pitman's behavior.
19  However, it does not appear that Mr. Wolfe was prepared for Mr. Pitman. Mr. Wolfe indicated
20  he was not able to read all of the handwritten notes of his predecessor, Mr. Cochran, in order to
21  familiarize himself with Mr. Pitman's background. Mr. Wolfe was not aware of the fact that Mr.
22  Pitman suffered from ADHD, and had either a mental affect or bipolar diagnosis.  While his
23  voice was raised, apparently this was consistent with prior behavior exhibited by Mr. Pitman
24  with Mr. Cochran. Mr. Pitman did not physically intimidate Mr. Wolfe, nor stand up during the
25  interview session. Mr. Pitman was distressed about a change of counselors.  It is true that Mr.
26  Pitman did not like Mr. Wolfe, and did not consider Mr. Wolfe to be as good for him as Mr.

01  Cochran, but the termination in this case, after a 5 to 10 minute session under the circumstances
02  present, does not establish the violation at issue, particularly when Exs. 15 and 16 indicate that
03  Mr. Pitman's progress and participation in the Recovery Options Northwest Program with Mr.
04  Cochran was rated "fair" in November of 2005 (Ex. 16), and rated "good" in late December of
05  2005 (Ex. 16).

06  <u>Alleged Violation No. 5</u>. Mr. Pitman denies using any marijuana. However, on January
07  30, 2006, Mr. Pitman was directed to provide a urine sample for analysis ("UA"). The sample
08  was subjected to a test that provided an immediate presumptive positive result for THC, the
09  active ingredient in marijuana. The sample was sent for further analysis by Scientific Testing
10  Laboratories, Inc., in Richmond, Virginia. Further testing confirmed the existence of THC in
11  the sample, indicating that Mr. Pitman had used marijuana.

12  Mr. Pitman's denials are not credible. I recommend that the Court find the
13  defendant to have violated his terms and conditions of supervised release as to violation No. 6.

14  <u>Alleged Violations No. 6 and 7</u>. Probation Officer Larson testified that he was concerned
15  by some physical appearance changes and demeanor changes of Mr. Pitman, possibly indicative
16  of potential steroid usage. On February 21, 2006, he directed Mr. Pitman to provide another
17  UA. The UA tested negative for the four pre-screening substances, which would not include
18  steroids. The sample was sent for steroid testing by Scientific Testing Laboratories, Inc., in
19  Richmond, Virginia. The test results that came back proved positive for the appearance of the
20  steroids nandrolone and 19-norandrosterone (Ex. 10).

21  When confronted with these test results, on April 3, 2006, Mr. Pitman admitted that he
22  had used steroids, stating he had a prescription for Deca-Durabolin, Winstrol, and additional
23  testosterone substances to alleviate some symptoms associated with spinal damage injury. Mr.
24  Pitman acknowledged that he did not advise his probation officer that he was using the steroid
25  substances, but asserted he had a proper prescription for them. The standard terms of his
26  supervised release do not require that he notify his probation officer of his prescriptions,

REPORT AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE AS TO ALLEGED
VIOLATIONS OF SUPERVISED RELEASE
PAGE 4

although his compliance contract (Ex. 12) purports to require him to refrain from taking any prescription medication "until the doctor prescribing the medication has been advised of my substance abuse history. Documentation of the doctor's knowledge must be provided to the U.S. Probation Officer." Ex.12. This contract was signed by Mr. Pitman on October 31, 2005. No such notice was provided to the probation officer, although there is a form for doing so. Ex. 11.

Mr. Pitman obtained a prescription for Winstrol and for Testosterone Suspension from Dr. Levine on March 1, 2006, and March 15, 2006. Ex. 13. Dr. Levine has previously had his license to practice medicine suspended, although his license was active at the time he wrote the prescriptions for Mr. Pitman. Mr. Pitman did not notify his probation officer of the prescriptions until the meeting on April 3, 2006, when Mr. Larson confronted Mr. Pitman with the positive indicators for nandrolone and 19-norandrosterone. At that time, Mr. Pitman produced his prescription forms. He also consented to a search of his house, where additional steroid substances (Ex. 14, p.1-9), including animal steroid substances, were found. Mr. Pitman testified that he had some of the human steroid products because of the prescriptions, and that a friend gave him other steroid products, including the animal steroid products, but was not using them. He stated he was holding them for the friend, but they were secured in his residence.

From the evidence received, it appears that Mr. Pitman obtained a prescription from a licensed physician, even though there are questions regarding the physician's medical qualifications. Moreover, the terms of standard condition No. 7, the basis of the alleged violation, do not require that the Probation Office be notified of any prescriptions, although the contract purports to do so. Hence, the question as to whether a violation has been committed, is whether the steroids used and in the possession of Mr. Pitman were prescribed by a licensed physician.

In this case, the steroid UA was conducted on February 21, 2006. Ex. 10. The earliest prescription that Mr. Pitman was able to produce was dated March 1, 2006. Although Mr. Pitman has asserted that he had earlier prescriptions, none were introduced. It appears that the

prescription was obtained in response to the UA for steroid testing.

As a result, I recommend that the Court find that Mr. Pitman violated the terms of his supervised release relating to violations Nos. 6 and 7 as alleged.

I therefore recommend that the Court find the defendant to have violated the terms and conditions of his supervised release as to violations Nos. 1, 2, and 4 as admitted, and that the defendant also be found to have violated the terms and conditions of his supervised release as to violations Nos. 5, 6, and 7. I recommend that the Court find that the defendant did not violate the terms and conditions of his supervised release as alleged in violation No. 3.

A disposition hearing has been set before the Honorable John C. Coughenour on June 9, 2006, at 9 a.m. Pending a final determination by the Court, the defendant has been detained.

DATED this 4th day of May, 2006.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
United States Magistrate Judge

cc:  District Judge:        Honorable John C. Coughenour
     AUSA:                  Mr. Donald Currie
     Defendant's attorney:  Mr. Robert Leen
     Probation officer:     Mr. Michael J. Larson